The U.R.A. provides for prevailing plaintiffs inverse condemnation cases under the Tucker Act for a fee-shipping statute that provides that the court shall award to the plaintiff, as part of the judgment, reasonable attorneys fees and costs. This provision is mandatory and is a known risk that the government undertakes when, instead of condemning, they force their citizens into an inverse condemnation action. In addition, the fee-shifting provision does not apply to condemnation actions, so the risk of paying the attorney's fees is one that can be completely avoided by the government. Do you agree that the same standards are applied in the statutes under 1980, for example? Your Honor, I absolutely agree that the standards for calculating a reasonable fee should be the same across all of the statutes that use the phrase reasonable fee. I think it's important to realize, however, that if one departs from the objective criteria of the lodestar, which the Supreme Court continually affirms should happen only in rare instances, but if you're going to depart from that lodestar calculation and look at subjective factors, pull them back out of the Johnson case from 1973 in the Fifth Circuit and look at things like the results obtained or the significance of the action, then you need to go back to what was the core statute. Well, is results obtained relevant? I do not think it is relevant, Your Honor. I would say that even in the objective proportionality test, the results would be still relevant. You know, Your Honor, if you look – yes, first of all, the answer to the question is it says that. But when you look at the body of Supreme Court cases that starts with Hensley and now ends with Perdue, Hensley approaches it at something of a 50-50 level. You start with lodestar, and then you start applying Johnson. And then you go to Blanchard and Bloom and the city of Riverside, and then you get to Perdue. And in each of those cases in progression, the court gives a nod to, well, maybe you could depart from lodestar. Maybe the Johnson factor still has some relevance, but not in this case. And by the time you get to Perdue, where it says that these departures must be rare and in exceptional circumstances, I think the question of whether one can apply the Johnson factors, particularly the ones subsumed in the lodestar calculation, which includes results obtained, the factor relied on by the district court, by the time you get to Perdue, when you are looking at whether or not any room still exists to apply the Johnson factors, it has become almost an esoteric question. I don't know – So it's also, isn't a relevant factor anymore in your view? In my view, Your Honor, I don't think it's relevant, and I don't think the court needs to get to the question of whether there is still a tiny crack where an exceptional case can call for the application of that factor after the fact as opposed to in the lodestar itself. Because this case is not an exceptional case. It's not a rare case. This is a complex-taking case, which was well litigated below, where both parties presented a straight lodestar analysis to the district court. That's what the plaintiff did. They exercised billing adjudgment. They cut 320, 317 hours before the plaintiff went in. They asked for no interest. They used historic rates. They billed in tenth-of-an-hour increments. Yes? The statute says such sum as will in the opinion of the judge reimburse. Correct. That's right. In the opinion of the judge. That seems to endow Judge Davis in this case with a vast amount of discretion, does it not? Well, it might bestow a vast amount of discretion if it were not for the progression of Supreme Court decisions that have increasingly narrowed that discretion and moved more and more and more to a straight lodestar analysis for the particular reason, as stated in Purdue, that the court wants to cap in the discretion. The court wants predictable results. They want objective results. And they do not want to have results colored by subjective considerations of a particular district court. It's also clear that the factors that go into the lodestar that they cannot be taken into account is a negative enhancement to be treated, you can call it that. None of the cases deal directly that I've seen yet with a negative enhancement in terms of the Supreme Court cases. Did I miss one in there? They all go the other way. Most go the other way. I suggest Blanchard as a case where a contingency agreement was being applied below to cap a fee and it went up to the Supreme Court who said the contingency fee agreement has no part in this analysis. You have to go back to lodestar. What about the contingency fee in this case? The trial judge seemed to think that was relevant to setting the amount. Yes, he did. And I think that his view of that relevance absolutely drove the 50% reduction in this fee so that it would fit. Isn't that within his discretion? No, it's not within his discretion. It's not a relevant factor? It was not a relevant factor as it was applied by this court in this case. But the general Supreme Court said you can't cap the fees based on the contingency fee agreement, but it is a relevant factor, right? That is, in fact, what the court said when the federal claims court in the Sheldon case and the claims court in the Branning case looked at those issues within the context of the URA. They read any leftover discretion. They did not think they had any leftover discretion to apply. But the Supreme Court said that the fee reduction was still a relevant factor, right? It can't be governed. In one of the cases before Purdue, the court said it was still a relevant factor, a possibly relevant factor. Well, then we have to follow that. We're not supposed to ignore what the Supreme Court tells us to do. Well, I think- I'll tell the explicit exchange. Well, I believe if one is going to follow what the Supreme Court does in the contingency cases, then one does not stop at the possible relevant factor language that they put in the opinion on the way to saying the contingency agreement in Blanchard should not be used to decrease the fees calculated under the Lodestar. And they say that because- I thought what Blanchard said was that it can't be used to cap the fees, but that it's a relevant factor, whatever that may mean. Whatever that may mean. I'm sure Your Honor's quotation of the Blanchard decision is correct. I would also say that as the lower courts deal with how to apply that decision, certainly the federal claims court has not thought it had the discretion to have the contingency fee be a major factor. And I would also point out that even if you were going to think that it is a factor, if you look at the retention agreement in this case, the retention agreement provides that the counsel will get the greater of the fees awarded under a Lodestar basis, or one-third of the recovery. Judge Davis noted that stipulation happened way back in 2003, and said that the negotiations which happened thereafter were not very difficult, suggesting as well a reason for reducing the fees. Can you address that? Yes, Your Honor. The timeline of this case is a little unusual. It was filed in 1999. Judge Hanna had it and was supervising it at that point. Judge Hanna was the judge for this case through the very complex- Why did it start in Kansas? Why did it start in Kansas? Because at that time it was thought that we could have a nationwide multi-trail class action, so that there were plaintiffs in the Swisher case in Kansas involving a trail in Kansas, involving this trail in Texas, involving a trail in Iowa, I think that's the Lowers case, and Indiana. The Swisher court said she wasn't going to deal with anything but Kansas, and transferred out all of the sister cases to their home districts.  Returning to your question, Judge Rader, 58% of the hours in this case were incurred at that early stage before Judge Davis ever had responsibility for the case. The parties then agreed to cooperatively work to subcontract out all of the administrative work in this case. So they found a claims administrator to do the somewhat administrative work of identifying who were the landowners on the record date and taking care of notice. They subcontracted out to an appraiser to do the appraisal work, and then attorneys at the appropriate level supervised, jointly supervised, those contractors responsible for the administrative work. The counsel on this case worked very well together. They have worked together on multiple trails acts. They know what they can argue for. They know what they're going to win or not. They want to do them efficiently. And the parties jointly operated and cooperated in such a way that they didn't have to bring a dispute to Judge Davis. It's not because the issues did not require a high level of expertise. They just didn't require the district judge because these counsel were doing what they were supposed to be doing. But the timeline is the point that Chief Judge Rager was pointing to. It's the same question I had. The trial judge notes that the class action was certified in 2000. The stipulation of liability was agreed to in 2003. And then it took six years to settle the damages claim. And the question is, why did it take six years to settle damages? I appreciate that you had to figure out what these were the symbols and what these were the easements for the railroad. And you had to keep track of how many were in your taxes claim. I believe there were 400 buses here. 400? 400 buses. So, the puzzle is why it took six years. Who caused, the trial judge's point was that this and some of the Supreme Court dictates suggests that lawyers will grant this sort of thing out in order to build their fee. Did we have such a problem? No, you did not. Only 20% of the fees were incurred during that period of time when the parties were jointly supervising. We can absolutely agree that that took too long. The sister cases that we have spoken about, settled out in 2005. The same council, we're doing the same things. If you compare the city council getting along, you're talking about government council. Government council and planning council, yes. Or just the two planning councils. The two sides. There is, in fact, for most of this time, only one planning council who billed almost double the hours on this case after that stipulation in 2003. It was only 20% of the time. The hours were 30 or 40 hours a year in 2005, 2006, 2007. The years Judge Davis is worried that we were dragging it out. And I think it's important to note that the government, who has every incentive to try and does, take issue with any hour they can take issue with. When we put in a fee claim, specifically said the majority of our hours were reasonable. The lodestar was the presumptive basis for doing the calculation. And they had no objection to a single hour. In 1999, 2006, and 2005, 2006, and 2007. What about the government's argument that you should have applied, the district court should have applied the forum rate here? That both under regional circuit law and under our law, the presumption is the forum rate. Well, I think there are two parts to that question, Your Honor. One is the choice of law question. Is it the forum law, or is it the law of the Fifth Circuit? Well, it's true that under both the Fifth Circuit law and under our own laws, reflected in the Bureau, the presumption is the forum rate. And you only depart from it in unusual circumstances. So why should the forum rate, that is the Texas rate, and this is the Texas rate, apply here? Your Honor, the government cites the Vera case. We're obviously familiar with the Vera case. It was, as you know, because you wrote the decision, written in the context of an immunization program where the... Yeah, I understand, but the question is, Vera says the forum rate, regional circuit law says the forum rate. Why depart from the forum rate here? What's the justification for not using the forum rate? Okay. If I may reserve our contention that a Vera is limited to the circumstances in the statute in that case and point the court to the fact that every federal claims court and court of appeals who have looked at the decision have looked at it and included... But that's not the question. The question is, Vera says the presumption is the forum rate. Vera departed in unusual circumstances from the forum rate. The forum rate is the usual rule. Why shouldn't the forum rate apply here? Okay. These are the reasons the forum rate should not apply, if the court would be otherwise inclined to take the holding of the Vera and apply it to URA cases. URA cases, and particularly the Tucker Act cases and the Federalist cases, are highly complex. They call for very specialized skills. You have a declaration in the record from the plaintiff saying he investigated counsel in his hometown and could find them. None. That was the same situation in Swisher where the court dealt with this issue of whether Federal Circuit or Tenth Circuit would control, and that's when she thought Federal Circuit would mean that the hometown rule applied and concluded that the result would be the same under the Tenth Circuit that does the forum rule where the Federal Circuit that she presumed did the hometown rule because in each case there was an exception. Because in the Tenth Circuit there was an exception and you had to go out of the jurisdiction. Your lights have been red for some time. Oh, I'm so sorry. Out of the jurisdiction to get competent counsel. I would suggest this is one of those circumstances. Thank you, Mr. DeFalco. We'll restore your rebuttal time. Could you give an extra two minutes to Ms. Durkee if she needs to use it? Please, I'm Ellen Durkee for the United States. On either of two alternative grounds, this court may affirm the judgment, $413,000 for attorney's fees, and this takings case required very little litigation that was brought in the Eastern District of Texas. Now, I will turn to those issues in turn, but there were a couple of things that I wanted to make sure that I addressed based on the discussion so far. And first of all, I would like to point out that Blanchard, the holding of Blanchard was that contingency fee cannot be determined, it cannot be the absolute caps that the court of appeals had held there. But it does say that it is a realm of consideration. Ms. Durkee, the contingency fee was not a contingency fee as such. The contingency fee was calculated either on the value of our professional services at our regular hourly rate or by multiplying by one-third and setting the contingency fee, whichever is greater. So it seems to me that the actual document that they signed, that was signed by the client, precludes using the contingency fee as a cap or even as a major consideration. What's wrong with that argument? Well, it certainly is not a cap. And I believe the agreement is a consideration in both aspects for these reasons. First, part of the point I want to make is that this is a class action. It is controlled not only by the URA, but by Rule 23 of the Federal Civil Procedure. And then the advisory notes to Rule 23H that talks about reasonable attorney's fees, it talks about, it says active judicial involvement, major and fee awards, is singularly important to the proper operation of class action process. In a class action, the district court must ensure that the amount of payment are fair and proper whether the fees come from a common fund or otherwise paid. Even in the absence of objections, the court bears this responsibility. And then it drops down and says courts have given way to agreements among the parties regarding the fee notion. Side agreements regarding fees provide at least perspective pertinent to an appropriate field. So I think we accept that it is a pertinent consideration. And the reason I think that it supports what the district court did, the court said, I'm trying to figure out what the attorneys contemplated as a fair award here. We know it can be a third of the overall award, one third. Or it said it's regular hourly rate. Whichever is greater. Whichever is greater. But you see, what we have objected to all the way through here is the hourly rates. There is no evidence this is the regular hourly rates. Here's my problem with your case. Let me be very succinct with you. The trial judge says reasonable hours are X number. And he wipes out the part for the amicus whatever that number is. Reasonable hours of so many. And he says let's look at the fees. He looks at the fees, goes through the whole calculation. Reasonable fees. He multiplies those two numbers together. Which is exactly what he's obligated to do under the Lodestar analysis. At that point, he suddenly says, oops, I'll reduce it by 50%. Now, first of all, having found that the hours were reasonable and the fees were reasonable, there's a real question as to whether he can make a downward adjustment on the basis of no basis. But the bigger question for me at the moment is where do you get 50%? Why not 35? 52? 78? He makes no explanation whatever of where the 50 came from. Other than the number happens to work out to be close to what a contingent fee is. And if that's so, then it seems to me he clearly abused his discretion by applying implicitly, if not implicitly, a contingent fee which he couldn't even apply because it says whichever is greater. Help me get over that hurdle. That's my big problem with your case. First, he finds the fees reasonable, Lodestar amount. The hours are reasonable. And then suddenly he quits again. What do we do with that? I want to say the two points, and then I'll open up. First of all, in prorated reductions, which are very common, this is the kind of percentage things that courts don't explicitly, they do it on top of the Lodestar, and this is very common. Secondly, the government has provided and has argued all the way through a mathematical way to get to this particular judgment. And that's why I think the formula is particularly important because that's how you get there. The formula gives you this number. Now, going back to your question about how did the judge come up with it, obviously I can't show you in his decision where he said for this part we're going to take this percentage and so on, but he did have more than one reason for reducing it. But it tends to look a bit as though he's applying a proportionality in taking and looking at the fee agreement. The alternative percentage is being highly pertinent. Isn't this a case in which he's gone too far in considering the results? Even if he can continue to consider the results, isn't this a case in which it looks as though he's applied a little proportionality? I disagree with that reading of the court's decision. I don't think it reads to say I have to have it be proportional. This is a cap on what you can get. What he is saying is that I am looking at the overall results, and this is an appropriate consideration under the Supreme Court law, especially in class action lawsuits. And he's saying, and this is where I think an important part of this is he was explaining this was not a difficult case. Most of the tasks were administrative. It was especially after the United States conceded the liability, and yet the fee amount were based on very, very high hourly rates. And that provides a basis for reducing. Explicitly to be reasonable. Now, had he said the rates were unreasonably high for the reasons you're citing to us, that might have presented a wholly different case. But he didn't. The trial judge specifically made a finding that the rates were reasonable. I don't see how we can find that finding in a beautiful case for you. I think that you can find, I don't think, I think what you can find is that he exercised his discretion by taking into account the ease of the work, if I may, at the second stage in the analysis. And that really is, to me, the question. Is he required to only do that in calculating the lodestar? Hensley would suggest that you do not have to do that. A lot of case law would suggest that courts are not confined to doing that first step. That they can take into account when they're applying the Johnson factors. Did that lodestar take into account all the relevant factors? In this case, he said he didn't. Because you're looking at partner high, very high, by the way, D.C. rates. Not the laughing matrix rates, but another matrix. What proportion of these high rates, as you described, are built into this calculation? The petitioner suggests only 20% or something like that occurred. Half of the liability. Well, I think, I don't, sorry, I don't remember the exact figures in my brief, but I believe that almost half, you know, closer to half of the, than less, of the fees, the amount, was after the liability stipulation. And so, the more the pattern is that you had associates working on the case prior to that time, and then after the stipulation liability, it's much more of a trend for the higher price attorneys to be working on. So, you know, you can look at it in terms of hours, but you can also look at it in terms of amounts and hourly rates, and that's where, you know, we're concerned that it gets skewed. What about the forum rate issue? Both under our law in the region, certain laws, the presumption in favor of using the forum rate, plenty of arguments here, forum rate was not appropriate because there wasn't a competent counsel available for these two different factors. What's the answer to that? Well, the answer to that is that in the district court, they basically were so sure that the formal did not apply, that they really didn't put any evidence in. The only evidence that they put in was a very general affidavit by Mr. Bywaters that said, I have a local attorney, but, unnamed, but it appeared to me that he wasn't really able to help me, and I looked and I found these people. The case law... He did not say that he couldn't find a competent counsel. He said that he... Where's the affidavit? It's in the joint appendix at page 539. He said, I had an attorney that was local in the region to help me. Despite this attorney being unknown to me, being very experienced, it became evident early on that this attorney was unable to help me and others with what he described to be a complex speciality area of the law. I, therefore, began a lengthy search to find an attorney who was knowledgeable. I kept researching party groups. The only attorney I could find in the whole country who would help me is the Atkerson Group. Now, the reason I have that suspicion... First of all, you've got a case law in the Courts of Appeals of the 9th Circuit and 5th Circuit that says you can't just be a self-serving affidavit by party litigation. There has to be... Typically, you need affidavits from Texas attorneys that would say... Secondly, what we showed... ...Texas attorneys say, yes, I agree, I'm incompetent... Apparently, they find them because they're usually in the cases... The other thing is that we showed you... The expertise of... I think you also have to look at... First of all, the Atkerson Group was not the only attorneys that handled this case. The Coons Group also handled it. In their declaration, which is in the Joint Appendix at page 530, what they said was, we have gotten interested in this because we're part of a consortium of firms that have been doing the fiber optic cable cases. This was sort of a natural movement in this area of law. What we pointed out is that there were class actions handled by attorneys in the Eastern District of Texas, from Beaumont and so on, that did fiber optic cable litigation. That would suggest that that's what their qualifications are, that these people handle it. Secondly, I don't know what to make of this because we don't have all the information, but what we do know is that their complaint was signed by a Texas attorney who was part of this consortium. I did not see fees on the form, but that would suggest to me that it was more just how they decided they wanted to staff this case, not because it was a Texas attorney. Why does this give me an uneasy feeling that the government now wants to participate in the selection of plaintiffs' counsel? I don't think... That's not it at all. What the government... Our concern is this. The taxpayers pay these fees. That's the choice Congress has made. Reasonable fees has been... The Supreme Court has said it, and the other courts have said it, is not the highest raised and the richest law firms in the country. The reason that the foreign role has developed is that it has an ease of administration and has an aspect of fairness. From our perspective, the argument is they can choose their attorneys. Absolutely. But the question is, when they choose to go to the District of Texas, and I want to talk to you about why they did that, should they be paid at the form rate or should they be able to get raised at one of the highest legal rates in the country? The reason... The government asked to transfer this case to the Court of Federal Appointments in District 49. In their response and opposition to transferring to this court, what they said was, well, it's true. They had two arguments. One is it's convenient for the parties to have it in Texas. But the other, and I suspect more importantly, is they said, you know, the Rule 23, the full-class access, we're going to be at a disadvantage because of the way the Court of Federal Appointments applies Rule 23. It is to our benefit to be in the Eastern District of Texas because they allow opt-out class actions in the Court of Federal Appointments when they're opt-in. So they chose that in order for them to get a higher rate of compensation for the attorneys so that the whole class amount would become larger. And yet, when it is now to their detriment, to look at things like the forum, they're saying, no, no, the forum has nothing to do with it. We can choose to be wherever we want. We can choose to get, you know, as if we fought it. Quick question for you. Do you have any comment you want to make about the table that's included in the reply brief that sets out all the various cases in which the damages were substantially smaller than the fees the court awarded? Yes, I have no... I assume those numbers are correct. We have not made the argument that you cannot get fees that exceed the rate amount. The difference in those cases, though, that you can't just see from the numbers is we don't know, you know, you can't see what the hourly rate that we requested are. I can tell you this, in Swisher, a case that they rely on, the hourly rates, their regular hourly rates that they billed on were approximately $80 to $100 an hour less for the exact same attorneys than they're asking for here. And those figures also don't tell you how much litigation led to that settlement. So I do want to be perfectly clear, we're not denying that sometimes the rates to the attorneys are higher than the amounts. And the court has no further questions. Ms. Galvin, we have restored your two minutes to rebuttal time. I very much appreciate it. Complex issues in the litigation, complex issues in the appeal, forgive me for speaking. With respect to whether or not it was a violation of law for the district court to cut these fees by 50% on the basis of the results obtained, the Delaware bounty decision from the Supreme Court in 1986 says, specifically held in Bloom, that the novelty and complexity of the issues, special skill and experience of counsel, quality of representation, and results obtained from the litigation are presumably fully reflected in the lodestar amount and thus cannot serve as an independent basis for increasing the fee or deviating from the lodestar. In this case, the court calculated the lodestar, found that it was reasonable, found that the rates were reasonable, found that the hours were reasonable, and then he cut 50% because he was trying to push this case into a private court case paradigm that the retention agreement certainly does not support and which completely undermines the whole purpose of Congress in fee-shifting statutes. The purpose of Congress in fee-shifting statutes is to change the question on initiation of the suit from, can I afford it? to, can I win? And if I can, can I find a counsel who will wait 12 years to get paid for it? The government suggests you stay out of the court federal claim in order to boost your fees. Do you have a comment about why did you choose Bill Tucker which limited your fee recovery in each case to less than $10,000? The $10,000 cap was sufficient to get full recovery for this class. The court found in the settlement approval that the full value of the parcels was obtained. It is absolutely the case that the appraiser was going to have to come from Texas and it made sense. There was no parcel value more than $10,000 anywhere? I do not believe so. There were a few. But most of them were $10,000 and the opt-out procedure permits people to opt-out in that circumstance. I would also point out that the court permits us in the Little Tucker Act to go locally. I was not there. I do not know what the calculation was in terms of fees. I do know absolutely that the calculation in terms of the quality of relief given in an opt-out class versus an opt-in class is extreme and it is much better with a class to have an opt-out class than an opt-in class. I am so sorry. Thank you, sir.